IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SARA I. SCHUMANN,

                Plaintiff,

vs.                               Case No. 14-2603-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On August 2, 2013, administrative law judge (ALJ) Christina Young Mein issued her decision (R. at 11-21). Plaintiff alleges that she had been disabled since May 1, 2011 (R. at 11). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2014 (R. at

4

13). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 13). At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 13). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 14). After determining plaintiff's RFC (R. at 15), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 19). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 20). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 21).

**III. Are the ALJ's RFC findings supported by substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20

5

C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the

opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Dr. Ruhlman, plaintiff's treating rheumatologist, completed two RFC forms, the first on November 21, 2011 (R. at 448-451), and the second on June 26, 2013 (R. at 601-604). On both forms, Dr. Ruhlman found that plaintiff can sit for 4 hours in an 8 hour workday, and stand/walk for 1 hours in an 8 hour workday (R. at 448, 601). Dr. Ruhlman also set forth other manipulative, postural and environmental limitations. The limitations on sitting, standing and walking would, of themselves, preclude a person from working an 8 hour workday. Dr. Ruhlman also opined that plaintiff would miss work more than 3 times a month due to her impairments or treatment (R. at 450, 603). Dr. Ruhlman indicated that the fibromyalgia tender points were objective findings of plaintiff's complaints of pain (R. at 449, 602). The ALJ gave little weight to the opinions of Dr. Ruhlman because they are "inconsistent with his longitudinal treatment of the claimant and the record as a whole, as described in detail herein," and because plaintiff has received little treatment for fibromyalgia (R. at 18).

Defendant stated in her brief that although the ALJ found that plaintiff had fibromyalgia, the ALJ "expressly noted in her decision (Tr. 17, 19), the absence of significant skeletal tenderness/trigger points" (Doc. 17 at 9-10). The ALJ decision noted a physical examination that found no skeletal tenderness or deformity, but pain to palpate trigger points on back (R. at 17, 553). Later in her decision, the ALJ stated the following:

> The records by the claimant's treating rheumatologist do show consistent complaints of back and leg pain; however there are little to no abnormalities noted on examination and **no findings on trigger points.**

(R. at 19, emphasis added). The ALJ fails to cite to any evidence that Dr. Ruhlman made no findings on trigger points. In fact, the records of Dr. Ruhlman indicate 13 of 18 trigger or tender points on October 3, 2011 (R. at 459, 462), and 18 tender points on December 27, 2011 (R. at 465). Even Dr. Goering noted that the medical records showed that plaintiff had 13/18 tender points (R. at 97).[1]

One of the criteria for finding fibromyalgia is that a claimant have at least 11 positive tender points on physical examination. SSR 12-2p, 2012 WL 3104869 at *2-3. The rule of thumb is that a patient must be positive on at least 11 of the 18 tender points to be diagnosed with fibromyalgia. Gilbert v.

---

[1] The terms "trigger points" and "tender points" are often used interchangeably. Beauclair v. Barnhart, 453 F. Supp.2d 1259, 1276 (D. Kan. 2006); see e.g., Moore v. Barnhart, 114 Fed. Appx. 983, 991 (10th Cir. Nov. 19, 2004).

Astrue, 231 Fed. Appx. 778, 783 (10th Cir. Apr. 11, 2007); Brown v. Barnhart, 182 Fed. Appx. 771, 773 n.1 (10th Cir. May 25, 2006); Moore v. Barnhart, 114 Fed. Appx. 983, 991 (10th Cir. Nov. 19, 2004).

The undisputed evidence, as set forth in the treatment records of Dr. Ruhlman, is that plaintiff had sufficient tender or trigger points for fibromyalgia. However, in discounting the opinions of Dr. Ruhlman, the treating rheumatologist, and when specifically referencing his records, the ALJ expressly stated that there were "no findings on trigger points" (R. at 19). This finding is clearly erroneous.

As noted above, the opinions of treating physicians are generally entitled to greater weight, and the ALJ must give a legally sufficient explanation for rejecting the opinion of a treating medical source. In this case, the explanation for rejecting the opinions of Dr. Ruhlman, the treating rheumatologist, included a statement that the records of Dr. Ruhlman showed "no findings on trigger points," when in fact the records clearly showed a finding of sufficient trigger or tender points for a diagnosis of fibromyalgia. Such a clearly erroneous finding cannot be deemed harmless error given the significance of the actual findings on trigger or tender points in the diagnosis of fibromyalgia and Dr. Ruhlman's reliance on those findings in his two RFC reports (R. at 449, 602).

The ALJ also discounted the opinions of Dr. Ruhlman because plaintiff had received little treatment for fibromyalgia (R. at 18). However, as plaintiff points out in her brief, the medical record shows a rather extensive treatment record (Doc. 14 at 11 n.3). Furthermore, the records of Dr. Ruhlman also show a number of additional treatment records from October 2011 through May 2013 (R. at 453-466, 542-544, 578-579, 584-592). The record does not support the ALJ's finding of little treatment for fibromyalgia. Therefore, this case shall be remanded for further hearing in order to reevaluate the weight to be accorded to the opinions of Dr. Ruhlman.

The ALJ also gave little weight to the opinions of plaintiff's treating psychiatrist, Dr. Heisler, who found that plaintiff had 3 moderate mental limitations, 2 marked limitations, and 1 extreme limitation (R. at 401-402); Dr. Heisler also provided a letter explaining the bases for his opinions (R. at 405). The ALJ stated that the extreme level of limitations indicated by Dr. Heisler are "inconsistent with the record as a whole" and further stated that treatment notes show that plaintiff's "condition improved with treatment" (R. at 18).

Plaintiff argues that the ALJ erred because the ALJ cannot state in conclusory fashion that an opinion is inconsistent with the record; the ALJ must reference those portions of the record with which the opinion was allegedly inconsistent. <u>Krauser v.</u>

11

Astrue, 638 F.3d 1324, 1331 (10th Cir. 2011); Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004); Hamlin v. Barnhart, 365 F.3d 1208, 1217 (10th Cir. 2004).

The extreme level of limitation found by Dr. Heisler was regarding plaintiff's ability to interact appropriately with the general public (R. at 402). However, the ALJ noted that plaintiff had gone to a concert and went out to eat or to the movies (R. at 19).

Furthermore, in his opinion, the ALJ gave great weight to the opinions of Dr. Markway and Dr. Fantz (R. at 18). Although not mentioned by the ALJ in her decision, these two state agency consultants stated that the opinions of Dr. Heisler contrasts sharply with the other evidence in the record, which renders it less persuasive (R. at 64, 101). The court finds that the ALJ could reasonably rely on the opinions of two medical sources for a finding that the opinions of Dr. Heisler are inconsistent with the record as a whole.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must

affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court finds no clear error by the ALJ in her weighing of the evidence on this issue.

The ALJ also discounted the opinions of Dr. Heisler because plaintiff' condition improved with treatment (R. at 18). However, it is possible for a person's health to improve, and for the person to remain too disabled to work. Cox v. Barnhart, 345 F.3d 606, 609 (8th Cir. 2003). On the other hand, although not mentioned by the ALJ, Dr. Fantz and Dr. Markway, state agency consultants whose opinions were given great weight by the ALJ (R. at 18), indicated that Dr. Heisler's own exams indicated improvement in the treatment records to explain why their opinions were less restrictive than those of Dr. Heisler (R. at 64, 101). Therefore, the ALJ's finding on this point is supported by the opinions of Dr. Fantz and Dr. Markway. The court will not reweigh the evidence.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 23rd day of February 2016, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge